Williams, C. J.
The personal property of which Mc-Cleary died seized, was not subject to taxation in both the counties of Butler and Preble. Some of it might properly be taxable in one county, and some in the other; but the .same property could not be required to bear the double burden of taxation in both. Nor could the listing of the prop *658 erty by Sommers, and that by Duffield, both be lawful. Either the one, or the other, was without the requisite authority to bind the estate. The first question we are called upon to decide, therefore, is, who was the proper person to list the personal property belonging to McCleary’s estate, for taxation. And the decision of that question, may go far toward determining, if it does not entirely do so, where the property should have been listed.
The statute, declaring who shall list personal property for taxation, provides that “the property of every ward shall be listed by his guardian,” and the property “ of every estate of a deceased person, by his executor or administrator.” And it also provides that, “ every person of full age and sound mind shall list the personal property of which he is the owner, and all moneys in his possession,” and “all moneys invested, loaned or otherwise controlled by him, as agent or attorney, or on account of any other person, company or corporation.” Revised Statutes, section 2724. With regard to the time and manner of listing the property, it is provided, that the person required to list it shall annually “ make out and deliver to the assessor a statement verified by his oath, of all the personal property, moneys, credits, investment in bonds, stocks, joint stock companies, annuities, or otherwise, in his possession, or under his control, on the day preceding the second Monday of April of that year, which he is required to list for taxation, either as owner or holder thereof, or as parent, husband, guardian, trustee, executor, administrator, receiver, •accounting officer, partner, agent, factor, or otherwise.” Revised Statutes, section 2736. The day preceding the second Monday of April, in the year 1889, was the 9th day of that month. And the record shows, that on the 25th day of the previous-month, Duffield was appointed administrator of McCleary’s estate.
It is well settled, that immediately upon the appointment of an administrator, all the personal estate of the deceased, passes to and vests in him, and his title as administrator, relates back to the date of the intestate’s decease. As was said by Parker, C. J., in Jewett v. Smith, 12 Mass. 310, *659 “ The property may be considered in abeyance until administration is granted, and is then vested in the administrator by relation from the time of the death.” In Lawrence v. Wright, 23 Pick. 128, the rule is stated by Shaw, C. J., as follows : “ The personal property of a deceased person vests in the executor or administrator, and when an administrator is appointed, the appointment dates back, and vests the property in him from the decease of the intestate. Those who have the property in custody in the meantime, have no fur-, ther power, or interest in it, than is necessary to enable them to keep it safely and have it forthcoming when called for by the administrator.”
We see no reason to doubt that on the 9th day of April, 1889, the title to the whole of the personal estate of Mc-Cleary, was vested in Duffield, the administrator, who alone had authority to represent the estate, and upon whom, as we have seen, the statute enjoined the duty of listing it for taxation. Counsel for the defendant in error claim, however, that Sommers was the proper person to list it for that year. They contend that, either the guardianship of Sommers continued until, on the settlement of his final account, the effects of the deceased ward, were under the order of the probate court, turned over to, and received by the administrator, or, they were, on the 9th day of April, 1889, otherwise so in Sommers’ control, as to make it his duty, under section 2734 of the Revised Statutes, to list the same for that year. In our opinion neither position is tenable. The guardianship terminated upon the death of the ward; and, thereafter, the guardian was without authority to do any act which could affect, or be binding upon the estate. He no longer held the property as guardian, but as a custodian merely. In English v. Campbell, Wright’s Rep. 119, it was held that: “A guardian, or a man that has been guardian, after his guardianship expired, has no more power than if he had never been appointed.” And see Perry v. Brainard, 11 Ohio 442. The final account to be rendered after the death of the ward, is not an account of an existing, but of the past guardianship ; and while such an account may be a conven *660 ient means of enabling the administrator to ascertain with accuracy the extent of the estate, it is not essential to his title to, or the exercise of his authority over it. We are unable to discover any ground upon which it can be maintained that the guardianship is extended until the settlement of the account. The possession retained by the guardian, of the ward’s estate, after the latter’s death, is a mere naked possession, without authority to invest, loan, or otherwise control the same; and, únder the decision in Myers v. Seabrook, 45 Ohio St. 232-235, such guardian is not within the provision of section 2734 of the Revised Statutes, which requires every person of full age and sound mind to list for taxation, “all moneys invested, loaned, or otherwise controlled by him as agent or attorney, or on account of any other person or persons.” In the case just cited, it was held, that the possession by an agent, of the credits of his principal, with authority to collect and remit to the latter the interest and principal, but without other control of the credits, did not make a case within the statute, authorizing the agent to list them for taxation. Applying the maxim nosoitur a socies in the construction of the statute, the court say: “ The phrase ‘ or otherwise controlled by him,’ must be construed to mean in a manner similar to the loaning and investing of money.” Nor, according to that decision, does the fact that the money, for which the credits were given, had been previously loaned by the person having them in possession when the same were listed by him, in any way alter the case. There, the securities listed by the agent, were given for money which he had previously loaned for the principal, and which were left in the agent’s hands for collection, and it was nevertheless held, the agent was without authority to list the securities for taxation. So that, in the case before us, the fact that the securities in the hands of Sommers, were given for money of the ward which he had loaned while guardian, is without significance. In our view of the question, therefore, the administrator, and not Sommers, was the proper person to list the personal estate of McCleary for taxation in the year 1889; and the due admin *661 istration of the estate, involved the payment of such taxes as had been, or might be charged against it.
With respect to the place where the property should be listed, the statute provides, that “ every person required to list property on behalf of others shall list the same in the same township, city, or village in which he would be required to list it if such property were his own.” Revised Statutes, sec. 2735. That this provision applies to administrators, is evident from the language of the next clause, which is, “ but he shall list it separately from his own, specifying in each case the name of the person, estate, company or corporation to whom it belongs.” Duffield, the administrator, being, as we have seen, the person who was required to list the property of the McCleary estate, in April, 1889, and it being his duty to list it in the same municipality or township where he should list his own property, the place of listing the property of the estate will be determined, when it is ascertained where Duffield should, that year, have listed his own property of like kind, unless other provisions of the statute prescribe a different rule governing such cases. The other statutory provisions on the subject are contained in the same section, and are as follows: “ all merchants’ and manufacturers’ stock, and all personal property upon farms shall be listed in the township, city, or village in which the same may be situated; and all other personal property, moneys, credits, and investments, except as otherwise specially provided, shall be listed in the township, city, or village in which the person to be charged with taxes thereon may reside at the time of the listing thereof, if such person reside within the county where the same are listed, and if not, then in the township, city, or village where the property is when listed.” It is shown by the record, that the property listed by Sommers as belonging to McCleary’s estate, consisted of credits, including mortgages, to the amount and value, of $103,000, and the remainder, amounting to $530, was tangible property, mostly farming utensils, and agricultural products. The tangible property, it is conceded, should have been listed in Milford township, Butler county, where it was situated *662 on the 9th day of April, 1889. The situs of the credits, for the purposes of taxation, is the substantial matter of the controversy. Credits, being rights in action merely, have no actual situs ; but, as such property is made the subject of taxation, it has been given a constructive or legal situs, which, when not otherwise fixed by statute, is that of the residence of the owner. It was said by Welch, J., in Worthington v. Sebastian, 25 Ohio St. 1-10, such property is “ incapable of a separate situs, and must follow the situs either of the creditor or the debtor. To make it follow the residence of the latter is to tax the debtor and not the creditor, to tax poverty instead of wealth. That it is the creditor and not the debtor that is to be taxed, and that the tax is to be imposed by the law of the creditor’s place of residence, and not the law of the debtor’s place of residence seems to be quite well settled by authority.” This general rule is recognized in Brown v. Noble, 42 Ohio St. 405, where it is said by McIlvainb, J., “ It is not disputed, that, as a general rule, the situs of personal property is, in law, the residence of the owner; nor that the administrator or executor of an estate is the owner of the assets, within the meaning of this rule. But granting this, it is nevertheless true, that the legislature may fix the place where personal property, including moneys, credits and investments subject to taxation in this state, must be listed.” After considering the provisions of sections 2784 and 2735 of the statutes, the conclusion derived from them is stated by the learned judge as follows: “It seems clear to us that the situs of moneys, credits and investments for the purposes of taxation, is the residence of the person whose duty it is to list the same, and not the residence of the owner if they be located in different counties.” Under this rule, inasmuch as it was the duty of the administrator, in April, 1889, to list the credits belonging to the estate of McCleary, they were properly listed by him in the township and county of his residence, notwithstanding McCleary’s residence at the time of his death, and that of the person who had been his guardian, were in another county, and the instruments which were the evidence *663 of the credits due the estate, were also in the latter county. The credits were not there, in the possession of any one clothed with the authority or charged with the duty of listing them; and the mere presence there of the evidences of the indebtedness, did not so fix the situs of the credits, as to require them, under the last clause of section 2785, to be there listed for taxation.
Counsel for the treasurer further contend, that Sommers is estopped from denying his liability to pay the taxes for which the action was brought. The argument is, that the tax list which he delivered to the assessor, and which was by the assessor returned to the auditor, induced the auditor to enter the property upon the tax duplicate, and charge the taxes for the current year against it, and Sommers ought not, therefore, to be permitted to dispute the statement contained in the return. It is plain an estoppel cannot be so raised. Thestatement purported to be a list of thq personal property belonging to the estate of McCleary, in Sommers’ hands as guardian. It seem that Sommers doubted his authority to list the property, and this is expressed in the statement. As has been shown, he was wholly without such authority, and his action was inoperative to bind the estate; and, if so, it is not readily perceived how it could operate to bind it by way of estoppel. The property is entered upon the duplicate, as the property of McCleary’s estate; the taxes are charged against Sommers as guardian; and the action is against him in his representative capacity. It is not sought to make him individually liable, and the facts alleged in the pleadings would not create an individual liability. The conduct of Sommers was not intended, or calculated, to mislead or deceive any one, but was founded upon an innocent mistake. The auditor simply performed his ministerial duty of carrying the property returned by the assessor upon the duplicate, and charging the taxes against it. His position was in no way changed by reason of the mistake, nor does it appear that the position of any other person was. The essential elements of an estoppel are wanting.

The judgments below will be reversed, and judgment entered for the defendant.